JUSTICE KOONTZ,
with whom CHIEF JUSTICE CARRICO and JUSTICE KINSER join, dissenting.
I respectfully dissent. In this appeal, the City of Bedford has the burden to show “that there is no conflict in the evidence of contributory negligence, and that there is no direct and reasonable inference to be drawn from the evidence as a whole, sustaining the conclusion that [Guy Duvall Zimmerman] was free of contributory negligence.” Virginia Electric and Power Co. v. Wright, 170 Va. 442, 448-49, 196 S.E. 580, 582 (1938). In my view, the City has met that burden.
The pertinent facts are not complicated or materially in dispute. Beyond question, the City’s employees negligently failed to disconnect the original underground power line that supplied electric energy from its nearby transformer box to the temporary meter base which had been installed by Zimmerman at a construction site for a new house. The City’s employees also negligently failed to cover the temporary meter base after removing the meter, placing it into a permanent meter base on the house, and energizing the new underground power line from the transformer box to the meter. Moreover, another *89 City employee verbally assured Zimmerman that the power line in question was “unhooked,” or no longer energized. Upon these facts, at trial the City admitted that it was negligent.
The critical facts regarding the issue of contributory negligence, however, were established by Zimmerman’s testimony. Upon direct examination, Zimmerman testified that he was a licensed Class B electrical contractor with over twenty-five years of experience in residential electrical contracting. With regard to the power line in question, he testified that “I started pulling the [power line] up because it [was] very shallow in the ground. I pulled it on over to the transformer. I pulled on it a little bit and it was a little stuck.” Zimmerman testified that he then cut the power line with his “cutters” without first testing the line with his available voltage meter. Upon cutting the power line, Zimmerman received an electrical shock that resulted in his personal injuries. This testimony shows that Zimmerman failed to act as a reasonable person with his knowledge of electricity would have acted for his own safety under the circumstances. But Zimmerman’s testimony on cross-examination is even more conclusive on that issue.
Zimmerman conceded that “the person who is dealing with the wire is the one who has the duty to positively know that it is energized or de-energized.” He testified, however, that he was not “positively sure” that the power line was unhooked and that he could have tested it with his voltage meter. Moreover, when he pulled on the line he did so lightly because “[i]f it [was] stuck in the transformer, I wasn’t taking a chance on hitting hot lines or something.” Finally, Zimmerman testified that if he had cut each of the three wires in the power line separately, rather than cutting all three at the same time, he could have “totally eliminate[d] the danger of shock.”
“[T]he danger of electrical energy is a matter of common knowledge to all persons of ordinary intelligence and experience.” Watson v. Virginia Electric and Power Co., 199 Va. 570, 575, 100 S.E.2d 774, 778 (1957). Here, Zimmerman not only knew of that danger, but he admittedly adopted a careless course of conduct that unnecessarily exposed him to injury from that danger. A reasonable, prudent person would not fail to test a power line before cutting it. An energized power line is unforgiving; it affords only one opportunity to test it to avoid an electrical shock. Moreover, a reasonable, prudent person knowing, as Zimmerman did, that cutting each wire in the power line separately would totally eliminate the danger of shock if the line happened to be energized would not cut the line in any other *90 way. Surely, an experienced electrician concerned with his safety would act in accord with that knowledge.
Contrary to the view taken by the majority in this case, whether Zimmerman’s conduct was reasonable is not a question that should have been resolved by the jury. Rather, “when persons of reasonable minds could not differ upon the conclusion that [contributory] negligence has been established, it is the duty of the trial court to so rule.” Kelly v. Virginia Power, 238 Va. 32, 39, 381 S.E.2d 219, 222 (1989). Zimmerman’s testimony established his careless, if not reckless, conduct. There is no conflict in that evidence and no direct and reasonable inference to be drawn from the evidence as a whole, sustaining a conclusion that he was free of contributory negligence. Regardless of the negligence of the City, Zimmerman knew that the power line might still be connected to the transformer box and energized when he elected to cut it without first testing it.
It is well settled that the issue of contributory negligence is generally a question for the jury to determine. The prerogative of the jury in doing so is to resolve conflicts in the evidence. That prerogative, however, does not permit the jury to weigh the evidence and assign degrees of negligence between the defendant and the plaintiff in a personal injury suit. In the present case, the evidence shows that both the City and Zimmerman were negligent and that the negligence of both efficiently contributed to Zimmerman’s injuries. Comparative negligence is not the law of this Commonwealth; contributory negligence is an absolute bar to recovery.
For these reasons, I would hold that the trial court erred in submitting the issue of Zimmerman’s contributory negligence to the jury. Thus, I would reverse the judgment in favor of Zimmerman and enter final judgment in favor of the City.